UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No.  1:17-cr-00032-NONE |
| Plaintiff, | |
| v. | ORDER DENYING DEFENDANT'S MOTION AND AMENDED MOTION FOR COMPASSIONATE RELEASE |
| JOSE LOPEZ-RAMIREZ, et al., | |
| Defendants. | (Doc. Nos. 76, 80) |

Pending before the court are defendant Jose Lopez-Ramirez's motion and amended motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A).  The motions are largely based on defendant's medical condition and the alleged risks posed to him by the ongoing coronavirus ("COVID-19") pandemic.  (Doc. No. 76; 80 at 2.)  For the reasons explained below, defendant's motions will be denied.

**BACKGROUND**

On April 30, 2018, defendant Lopez-Ramirez entered his plea of guilty to conspiracy to distribute and possess with the intent to distribute methamphetamine in violation of 21 U.S.C. §§ 846 and 841(a)(1) as charged in Count One of the indictment.  (Doc. Nos. 44 at 1–2; 45.) Following his entry of plea, it was determined that under the U.S. Sentencing Guidelines, defendant Lopez-Ramirez's adjusted offense level was 35 and his criminal history category was I,

resulting in an advisory guideline range calling for a term of imprisonment of between 168 and 210 months.  (Doc. No. 50 (Presentence Report) at 16.)  The U.S. Probation Office recommended a low end of the guideline sentence of 168 months imprisonment.  (*Id.*)  On September 24, 2018, the court varied downward from the advisory guideline range after considering the sentencing factors set forth at 18 U.S.C. § 3553(a) and defendant Lopez–Ramirez was sentenced to 120 months in prison with a 36 month term of supervised release to follow, with that supervised release term to become unsupervised if the defendant were to be deported.  (Doc. Nos. 62; 64 at 2–3.)

Defendant is currently serving his sentence at the U.S. Bureau of Prisons' ("BOP") contracted and private Rivers Correctional Institute in Winton, North Carolina ("CI Rivers"). (Doc. No. 80 at 2.)  On April 10, 2020, defendant, appearing pro se, filed the pending motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A).  (Doc. No. 76.)  On May 18, 2020, the court appointed counsel on behalf of defendant in connection with his motion for compassionate release.  (Doc. No. 79.)  On June 234, 2020, defendant's counsel filed an amended motion for compassionate release.  (Doc. No. 80.)  On July 9, 2020, the government filed its opposition to the motion, and on July 16, 2020, defendant filed his reply thereto.  (Doc. Nos. 81, 82.)

## LEGAL STANDARD

A court generally "may not modify a term of imprisonment once it has been imposed."  18 U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 824 (2010) ("'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances.").  Those limited circumstances include compassionate release in extraordinary cases.  *See United States v. Holden*, 452 F. Supp. 3d 964, 968 (D. Or. 2020).  Prior to the enactment of the First Step Act of 2018 ("the FSA"), motions for compassionate release could only be filed by the BOP.  18 U.S.C. § 3582(c)(1)(A) (2002).  Under the FSA, however, imprisoned defendants may now bring their own motions for compassionate release in the district court.  18 U.S.C. § 3582(c)(1)(A) (2018).  In this regard, the FSA specifically provides that a court may

upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf[1] or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that –

(i)     extraordinary    and    compelling    reasons    warrant    such    a reduction; or

(ii)    the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission [.]

18 U.S.C. § 3582(c)(1)(A)(i) and (ii).[2]

---

[1]  If the BOP denies a defendant's request within 30 days of receipt of such a request, the defendant must appeal that denial to the BOP's "Regional Director within 20 calendar days of the date the Warden signed the response." 28 C.F.R. § 542.15(a). If the Regional Director denies a defendant's administrative appeal, the defendant must appeal again to the BOP's "General Counsel within 30 calendar days of the date the Regional Director signed." *Id.* "Appeal to the General Counsel is the final administrative appeal." *Id.* When the final administrative appeal is resolved, a defendant has "fully exhausted all administrative rights." *See* 18 U.S.C. § 3582(c)(1)(A).

[2]  Under 18 U.S.C. § 3624(c)(2), the BOP may release an incarcerated defendant to home confinement "for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." The Coronavirus Aid, Relief, and Economic Security Act ("the CARES Act"), Pub. L. 116-136, expands the BOP's authority to release incarcerated defendants without judicial intervention. The CARES Act allows the BOP to "lengthen the maximum amount of time" for which a prisoner may be placed in home confinement under § 3624(c)(2) "as the Director determines appropriate," assuming "the Attorney General finds that emergency conditions will materially affect the functioning" of the BOP. CARES Act, Pub. L. 116-136, Div. B, Title II, § 12003(b)(2) (2020). However, the BOP's authority in this regard is limited to "the covered emergency period." *Id.* The BOP's authority expires "30 days after the date on which the national emergency declaration terminates." *Id.* § 12003(a)(2). After the CARES Act was enacted, the Attorney General issued a memo instructing the BOP to "immediately review all inmates who have COVID-19 risk factors" beginning with those who are housed at facilities where "COVID-19 is materially affecting operations." Office of Att'y Gen., *Increasing Use of*

3

1        The applicable policy statement with respect to compassionate release in the U.S.

2    Sentencing Guidelines sets out criteria and circumstances describing "extraordinary and

3    compelling reasons."  U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.13[3]; *see also*

4    *United States v. Gonzalez*, No. 2:18-cr-00232-TOR, 2020 WL 1536155, at *2 (E.D. Wash. Mar.

5    31, 2020) (noting that courts "universally" rely on U.S.S.G. § 1B1.13 to define "extraordinary

6    and compelling reasons," even though that policy statement was issued before Congress passed

7    the FSA and authorized defendants to file compassionate release motions).  However, a large and

8    growing number of district courts across the country have concluded that because the Sentencing

9    Commission has not amended the Guidelines since the enactment of the FSA, courts are not

10   limited by the pre-FSA categories described in U.S.S.G. § 1B1.13 in assessing whether

11   extraordinary and compelling circumstances are presented justifying a reduction of sentence

12   under 18 U.S.C. § 3582(c).  *See, e.g.*, *United States v. Parker*, __ F. Supp.3d __, 2020 WL

13   2572525, at *8–9 (C.D. Cal. May 21, 2020) (collecting cases); *United States v. Rodriguez*, 424 F.

14   Supp. 3d 674, 681 (N.D. Cal. 2019).

15       In the past, when moving for relief under 18 U.S.C. § 3582(c), it was recognized that the

16   defendant bore the initial burden of demonstrating that a sentence reduction was warranted.  *See*

17   *United States v. Sprague*, 135 F.3d 1301, 1306–07 (9th Cir. 1998).  Although the Ninth Circuit

18   has not specifically addressed the question of which party bears the burden in the context of a

19   motion for compassionate brought pursuant to § 3582(c) as amended by the FSA, district courts

20   _____

21   *Home Confinement at Institutions Most Affected by COVID-19* (Apr. 3, 2020).  The BOP has
acted on the Attorney General's guidance, including one case in which a sentenced prisoner was

22   released to home confinement after serving less than half his sentence from a facility that reported
no positive COVID-19 cases at the time of his release.  *See* Hannah Albarazi, *Paul Manafort*

23   *Seeks Prison Release Over COVID-19 Fears*, Law360 (Apr. 14, 2020), https://www.law360.
com/articles/1263706/paul-manafort-seeks-prison-release-over-covid-19-fears (noting that the

24   prisoner's counsel had argued that the CARES Act "broadens the authority" of the BOP to release
prisoners to home confinement); Khorri Atkinson, *Paul Manafort Released From Prison Amid*

25   *COVID-19 Fears*, Law360 (May 13, 2020), https://www.law360.com/articles/1273090/paul-

26   manafort-released-from-prison-amid-covid-19-fears.

27   [3]  The Sentencing Guidelines also require that to be granted a reduction of sentence under 18
U.S.C. § 3582(c)(1)(A), the defendant must not pose "a danger to the safety of any other person

28   or to the community, as provided in 18 U.S.C. § 3142(g)."  U.S.S.G. § 1B1.13(2).

1  that have done so have agreed that the burden remains with the defendant.  *See, e.g.*, *United*

2  *States v. Greenhut*, No. 2:18-cr-00048-CAS, 2020 WL 509385, at *1 (C.D. Cal. Jan. 31, 2020);

3  *United States v. Van Sickle*, No. 18-cr-0250-JLR, 2020 WL 2219496, at *3 (W.D. Wash. May 7,

4  2020).

5  **ANALYSIS**

6         As district courts have summarized, in analyzing whether a defendant is entitled to

7  compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), the court must determine whether a

8  defendant has satisfied three requirements:

9              First, as a threshold matter, the statute requires defendants to exhaust
             administrative remedies.  18 U.S.C. § 3582(c)(1)(A).  Second, a
10             district court may grant compassionate release only if "extraordinary
             and compelling reasons warrant such a reduction" and "that such
11             reduction is consistent with applicable policy statements issued by
             the Sentencing Commission.  *Id.*  Third, the district court must also
12             consider "the factors set forth in Section 3553(a) to the extent that
             they are applicable."  *Id.*
13

14  *Rodriguez*, 424 F. Supp. 3d at 680; *see also United States v. Ramirez-Suarez*, 16-CR-00124-

15  LHK-4, 2020 WL 3869181, at *2 (N.D. Cal. July 9, 2020); *Parker*, 2020 WL 2572525, at *4;

16  *United States v. Trent*, No. 16-cr-00178-CRB-1, 2020 WL 1812242, at *2 (N.D. Cal. Apr. 9,

17  2020) (noting that as to the third factor, under 18 U.S.C. § 3582(c)(1)(A) release must be

18  "consistent with" the sentencing factors set forth in §3553(a)).

19  **A.      Administrative Exhaustion**

20         On May 1, 2020, defendant submitted an administrative request seeking compassionate

21  release to the "facility administrator"[4] at CI Rivers based on the risks allegedly posed to him by

22  the COVID-19 virus.  (Doc. No. 82-1 at 3.)  On May 11, 2020, defendant's administrative request

23  was denied.  (*Id.* at 2.)  Because his request was denied within 30 days, defendant was required to

24  appeal that decision to the BOP's Regional Director pursuant to 28 C.F.R. § 542.15(a) in order to

25  exhaust his administrative remedies.  *See supra* note 1.  However, defendant argues that because

26  CI Rivers does not technically have a "warden" due to the facility's contracted status with BOP,

27  _____

28  [4]  Because CI Rivers is a privately contracted prison, it is managed by a facility administrator, not
by a warden.

5

1    further exhausting his administrative remedies would be futile and that the court should therefore

2    excuse his failure to exhaust.  (Doc. No. 82 at 2–3.)

3          As the COVID-19 virus continues to spread, district courts across the country have been

4    presented with the question in a variety of contexts of whether § 3582(c)(1)(A)'s administrative

5    exhaustion provision for defendants seeking to bring compassionate release motions in federal

6    court can be excused.  Some courts have found that it can be, *see, e.g.*, *United States v. Connell*,

7    ___ F. Supp. 3d___, 2020 WL 2315858, at *3–5 (N.D. Cal. May 8, 2020), while others have held

8    that the exhaustion requirement is jurisdictional and cannot be excused under any circumstances,

9    *see, e.g.*, *United States v. Meron*, No. 2:18-cr-0209-KJM, 2020 WL 1873900, at *2 (E.D. Cal.

10   Apr. 15, 2020).  For the purposes of resolving the pending motion, however, this court need not

11   resolve this issue.  As discussed below, the court concludes that defendant's pending motion for

12   compassionate release fails to establish extraordinary and compelling reasons warranting a

13   reduction of his sentence.

14   **B.      Extraordinary and Compelling Reasons**

15         "Extraordinary and compelling reasons" warranting compassionate release may exist

16   based on a defendant's medical conditions, age and other related factors, family circumstances, or

17   "other reasons."  U.S.S.G. § 1B1.13, cmt. n.1 (A)–(D).  Even though the catch-all of "other

18   reasons" was included in the policy statement at a time when only BOP could bring a

19   compassionate release motion, courts have agreed that it may be relied upon by defendants

20   bringing their own motions under the FSA.  *See, e.g.*, *United States v. Kesoyan*, No. 2:15-cr-236-

21   JAM, 2020 WL 2039028, at *3–4 (E.D. Cal. Apr. 28, 2020) (collecting cases).

22         Thus, the medical condition of a defendant may warrant compassionate release where he

23   or she "is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life

24   trajectory)," though "[a] specific prognosis of life expectancy (i.e., a probability of death within a

25   specific time period) is not required."  U.S.S.G. § 1B1.13, cmt. n.1 (A)(i).  Non-exhaustive

26   examples of terminal illnesses that may warrant a compassionate release "include metastatic

27   solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced

28   dementia."  *Id.*  In addition to terminal illnesses, a defendant's debilitating physical or mental

6

condition may warrant compassionate release, including when:

> The defendant is
>
> (I)   suffering from a serious physical or medical condition,
>
> (II)  suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

*Id.* at cmt. n.1 (A)(ii).  Where a defendant has moderate medical issues that otherwise might not be sufficient to warrant compassionate release under ordinary circumstances, some courts have concluded that the risks posed by COVID-19 tips the scale in favor of release in particular situations.  *See, e.g.*, *United States v. Rodriguez*, No. 2:03-cr-00271-AB, 2020 WL 1627331, at *10–11 (E.D. Pa. Apr. 1, 2020) ("Without the COVID-19 pandemic—an undeniably extraordinary event—Mr. Rodriguez's health problems, proximity to his release date, and rehabilitation would not present extraordinary and compelling reasons to reduce his sentence.  But taken together, they warrant reducing his sentence.").

Compassionate release may also be warranted based on a defendant's age and other related factors.  In these situations, "extraordinary and compelling reasons" exist where a "defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less."  U.S.S.G. § 1B1.13, cmt. n.1(B).[5]  In determining a defendant's projected release date, courts may take into account any "good time credits" awarded to the defendant by BOP for "exemplary" behavior in prison as set forth in 18 U.S.C. § 3624(b)(1).  *See, e.g.*, *United States v. Burrill*, No. 17-cr-00491-RS, 2020 WL 1846788, at *1 n.1 (N.D. Cal. Apr. 10, 2020).

/////

---

[5]  However, because defendant Lopez-Ramirez is only 40 years old (Doc. No. 50 at 2), his age and age-related factors do not play a role in consideration of his pending motion.

7

Here, defendant Lopez-Ramirez argues that extraordinary and compelling reasons warranting his compassionate release exist because "[a]s a Latino," statistically speaking his "susceptibility of contracting COVID-19 appears to be magnified greatly."  (Doc. No. 80 at 3.)  To qualify for compassionate release, however, defendant must demonstrate that he is suffering from some serious medical condition "that substantially diminishes [his] ability . . . to provide self-care" in CI Reeves and the medical condition is one "from which he . . . is not expected to recover."  U.S.S.G. § 1B1.13, cmt. n.1 (A)(ii).  At the time of his sentencing, defendant Lopez-Ramirez himself "stated he enjoys good health, and has no history of physical health issues." (Doc. No. 50 (Presentence Report) at 10.)  In moving for compassionate release, defendant does not argue that his medical condition has changed, nor does he identify any particular medical condition from which he suffers that places him at risk of becoming severely ill were he to contract COVID-19.  (*See passim* Doc. No. 80.)  Instead, he merely argues that although Latino individuals make up only 10% of the population in the U.S., they "account for nearly half of all" COVID-19 cases and therefore, he suggests, his motion for compassionate release should be granted.  (*Id.* at 10–11.)  Though the U.S. Centers for Disease Control and Prevention states that Latino individuals are disproportionately affected by COVID-19 due in significant part to societal inequities, *see Coronavirus Disease 2019 (COVID-19): Health Equity Considerations and Racial and Ethnic Minority Groups*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/ coronavirus/2019-ncov/community/health-equity/race-ethnicity.html (last visited Sept. 29, 2020), "the fact that because defendant is Latino he might face a higher risk of severe illness from COVID-19 if contracted, by itself, is not an extraordinary and compelling reason for compassionate release."  *United States v. Manuel Garcia*, No. 1:16-cr-00149-DAD, 2020 WL 4476398, at *5 (E.D. Cal. Aug. 4, 2020).  Simply put, defendant Lopez-Ramirez has not identified any "medical condition" that places him at greater risk of suffering a severe illness were he to contract COVID-19.  U.S.S.G. § 1B1.13, cmt. n.1 (A)(ii).  (*See* Doc. No. 81 (Government's Opposition) at 21 ("Lopez-Ramirez has no underlying health conditions; he is otherwise a healthy 39-year-old man.").)

/////

8

1       Accordingly, the court concludes that defendant has not met his burden of demonstrating

2   extraordinary and compelling reasons for compassionate release under § 3582(c)(1)(A) and his

3   motions seeking his compassionate release will be denied.

4   **C.**    **Consistency With the § 3553(a) Factors**

5       Because the pending motion and amended motion fail to establish extraordinary and

6   compelling reasons justifying compassionate release in this case, the court need not address

7   whether any reduction in defendant's sentence would be consistent with consideration of the

8   sentencing factors set forth at 18 U.S.C. § 3553(a).[6]

9   **CONCLUSION**

10      For the reasons explained above, defendant's motion and amended motion for

11  compassionate release (Doc. Nos. 76, 80) are denied.

12  IT IS SO ORDERED.

13    Dated:   **October 6, 2020**

14                           UNITED STATES DISTRICT JUDGE

---

24  [6] Nonetheless, the court notes that defendant's offense was a very serious one involving a large
amount of methamphetamine and the presence of firearms. (Doc. No. 50 at 6–7, 17.) Although
25  the defendant was held responsible for just under 3 kilograms of methamphetamine, it appears
that he had been selling methamphetamine for approximately a year and was actually responsible
26  for the distribution of more than that. (*Id*. at 6–7.) Nonetheless, the court varied significantly
downward from the low end of the guidelines (168 months) at the time of the original sentencing
27  to impose a term of 120 months imprisonment. No further reduction is called for here in
consideration of the § 3553(a) factors.
28